NOT DESIGNATED FOR PUBLICATION

No. 114,454

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DALTON D. BURKHARD,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed July 15, 2016. Affirmed.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellant.

*Donald J. Cooper*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*: The Kansas Department of Revenue (KDOR) suspended Dalton D. Burkhard's driver's license after he constructively refused a breath test by repeatedly clearing his throat. Burkhard petitioned for judicial review, and the district court affirmed. Burkhard appeals claiming he did not refuse the test because his allergies caused him to clear his throat. Moreover, even if he did refuse, he later rescinded that refusal by asking for another chance to take the test.

On September 6, 2013, Marion County Deputy Sherriff Larry Starkey received complaints that someone was driving erratically on nearby country roads. Deputy Starkey found the driver, Burkhard, and pulled him over. There was an empty bottle of Kentucky

Deluxe Whiskey on the front passenger floor and numerous empty beer cans in Burkhard's vehicle. Deputy Starkey gave Burkhard a field sobriety test and a preliminary breath test (PBT). Based on the result of these tests, Deputy Starkey arrested Burkhard for driving under the influence (DUI) and took him back to the sheriff's office. The drive took approximately 15 minutes. Deputy Starkey did not remember if he heard Burkhard clear his throat at the scene of the arrest or on the ride to the sheriff's office.

Deputy Starkey took Burkhard into the Intoxilyzer room for a breath test. He prepped the Intoxilyzer 8000 machine and told Burkhard not to "belch or cough or anything like that." About 2 minutes into the deprivation period, Burkhard cleared his throat. Deputy Starkey testified he was not sure if Burkhard was clearing his throat or belching. He could only tell Burkhard was making some sort of noise.

Deputy Starkey received training from the Kansas Department of Health and Environment on administering breath tests with the Intoxilyzer 8000. He testified the reason people should not belch or cough is because it might bring up stomach contents which could affect the accuracy of the test. The training protocol did not specifically state that a person about to take a breath test should not clear his or her throat. Deputy Starkey, however, believed clearing one's throat could also bring up stomach contents based on his personal experience.

Deputy Starkey restarted the deprivation period and told Burkhard not to clear his throat. Burkhard responded, "I can clear it when I want." Burkhard cleared his throat a second time, and Deputy Starkey told him they would have to restart the deprivation period. Burkhard cleared his throat a third time, and Deputy Starkey told Burkhard that counted as a refusal. Burkhard asked for another opportunity to take the test, but Deputy Starkey denied his request because he "had already given [Burkhard] three chances and [he] didn't see that changing." Deputy Starkey took Burkhard to a holding cell. On the way there, Burkhard asked for a blood test, but Deputy Starkey again refused.

Burkhard testified before the district court that on September 6, 2013, he had been outside shooting with friends. They brought a case of beer with them. Later, after dropping off his friends, he stopped and drank four beers.

Burkhard also testified he began clearing his throat even before he was arrested because he felt like he could not breathe. He stated he had suffered from allergies all his life. He told the court he did not bring any medical records regarding his allergies with him because he assumed his attorney was going to bring them.

Burkhard said he cleared his throat during the field sobriety tests and in the patrol car. Burkhard testified that once he entered the Intoxilyzer room, he cleared his throat a total of 53 times within 15 minutes. He told the court that Deputy Starkey repeatedly told him not to clear his throat. He pointed out, however, that he only cleared his throat 15 times after Deputy Starkey told him not to, demonstrating he was making a conscious effort not to do it.

Burkhard also testified he asked Deputy Starkey if he could take a blood test at a hospital in the nearby town of Hillsboro. Deputy Starkey remembered Burkhard asking to take a test in Hillsboro but did not remember Burkhard specifically asking for a blood test. He denied Burkhard's request because Hillsboro did not have the necessary facilities.

As a result of his refusal, the KDOR suspended Burkhard's license. Burkhard petitioned for judicial review of the order. The district court affirmed the order. Burkhard appeals.

Burkhard argues substantial competent evidence does not support the district court's finding that he constructively refused a breath test. First, he argues clearing one's throat is not the type of conduct that can constitute a refusal. Next, he contends the court's

3

finding was based on the erroneous assertion that Burkhard had to have told the officer about his allergies.

The State argues substantial competent evidence does support the district court's finding. The State contends there is no conflicting evidence regarding Burkhard clearing his throat, so the court's finding that he constructively refused the test is correct. The State also asserts that Burkhard had the burden of proving his allergies prevented him from completing the test and Burkhard did not meet this burden.

*Standard of Review*

We review a district court's ruling in a driver's license suspension case for substantial competent evidence. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008). Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). In evaluating the evidence to support the district court's factual findings, an appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

*Constructive Refusal*

Whether someone has refused to submit to a breath test is a question of fact. *McRoberts v. Kansas Dept. of Revenue*, 17 Kan. App 2d 680, 684, 843 P.2d 280 (1992), *rev. denied* 252 Kan. 1092 (1993). K.S.A. 2013 Supp. 8-1013(i) defines test refusal as "a person's failure to submit to or complete any test of the person's blood, breath, urine or other bodily substance, other than a preliminary screening, in accordance with this act." Furthermore, K.S.A. 8-1001(q) states, "[f]ailure of a person to provide an adequate breath

sample or samples as directed shall constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs." This court has construed these provisions to mean that "a test refusal is to encompass express refusals, acts, or conduct which may be interpreted as express refusal." *McRoberts*, 17 Kan. App 2d at 682.

A wide range of conduct may constitute a constructive refusal. This range generally includes any act that may alter the contents of a driver's mouth. See, *e.g.*, 17 Kan. App. 2d at 681 (petitioner constructively refused breath test by belching, coughing, and wiping mouth with a towel); *Brummet v. Kansas Dept. of Revenue*, No. 106,428, 2012 WL 687980, at *1 (Kan. App. 2012) (unpublished opinion) (petitioner constructively refused breath test by belching, getting a drink, and clearing throat). Even involuntary conduct may constitute a constructive refusal unless that conduct is the result of a medical condition unrelated to the consumption of alcohol. See, *e.g.*, *Brummet*, 2012 WL 687980, at *2 (finding involuntary belching caused by eating spicy food and drinking beer constituted constructive refusal).

Here, Burkhard refused the breath test through his conduct. After Deputy Starkey warned Burkhard not to "belch or cough or anything like that," Burkhard cleared his throat. Deputy Starkey then specifically told Burkhard not to clear his throat, but Burkhard cleared it again. Deputy Starkey told Burkhard numerous times not to clear his throat but he continued to do so without excuse or explanation. Clearing one's throat falls within the wide range of conduct that may constitute a refusal. By clearing his throat in direct contravention to Deputy Starkey's orders, Burkhard's conduct constituted a constructive refusal of the breath test.

Burkhard argues he was unable to stop clearing his throat due to his allergies. Burkhard bears the burden of proving his inability to complete the test was due to a medical condition unrelated to the consumption of alcohol or drugs. See *McRoberts*, 17

Kan. App. 2d at 682. At the time of the test, Burkhard did not mention why he was unable to comply with Deputy Starkey's orders. At trial, Burkhard testified he had allergies all his life, but he did not present any medical records or any other evidence demonstrating his allergies would have required him to clear his throat. Thus, the only evidence of Burkhard's allergies the court had to consider was Burkhard's testimony at trial. See *Call v. Kansas Dept. of Revenue*, 17 Kan. App. 2d 79, 84, 831 P.3d 970 (1992) (finding driver's statements at trial alone were insufficient to prove physical inability to complete test due to medical condition).

Burkhard is correct that the district court found he likely did have allergies and those allergies may have been aggravated by being outside earlier in the day before the test. The court did not find, however, that his allergies were responsible for his inability to take the test. As the court noted, Burkhard did not tell the officer he could not stop clearing his throat because of his allergies. This casts some doubt on the credibility of his claim that his conduct was due solely to a medical condition. Ultimately, Burkhard bore the burden of proving his allergies prevented him from taking the test, and he did not meet that burden. Thus, substantial competent evidence supports the district court's finding that he refused the breath test.

Burkhard also argues considering whether he told Deputy Starkey he had allergies is a violation of his right against self-incrimination under the Fifth Amendment to the United States Constitution. Burkhard did not raise this issue before the district court, nor does he provide a reason why we may hear this argument for the first time on appeal. Thus, this issue is not properly before us. See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015); *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011); *In re Estate of Broderick*, 286 Kan. 1071, 1081-82, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 778 (2009).]

Burkhard argues substantial competent evidence does not support the district court's finding he constructively refused the test because he demonstrated he was willing to take the test. Whether a petitioner was willing to or intended to take a test is not dispositive. In *McRoberts*, the petitioner testified that he had intended to take a breath test even though he constructively refused the test by belching, coughing, and wiping his mouth. On appeal, he argued in order for the district court to find he constructively refused the test, it would also have to find he intended to frustrate the test. The *McRoberts* court rejected his argument, noting that "even if a person attempts to take the test but produces a deficient sample, the person is deemed to have refused the test." 17 Kan. App. 2d at 683. In this case, Burkhard requested another chance to take the breath test or a chance to take a blood test. This alone, however, does not mean he did not constructively refuse the breath test. Even considering his requests, substantial competent evidence still supports the district court's finding that Burkhard refused the test.

*Rescission of Refusal*

Burkhard next argues that even if he did constructively refuse the breath test, he rescinded that refusal when he asked for another opportunity to take the test. KDOR responds that we do not have subject matter jurisdiction over this issue because Burkhard did not include it in his petition for review. Additionally, the State contends Burkhard raises this issue for the first time on appeal, and we should not review it. Lastly, even if we do review the issue, the State asserts Burkhard did not effectively rescind his refusal.

The KDOR argues Burkhard did not raise the issue of rescission in his petition for judicial review, thus, we do not have jurisdiction to hear the issue. Under K.S.A. 2013 Supp. 8-1020 and 8-259, a driver's license suspension due to failure or refusal of a breath test is subject to review before the district court by trial de novo. Any such review must comply with the Kansas Judicial Review Act (KJRA). K.S.A. 2013 Supp. 8-259(a); K.S.A. 2013 Supp. 2013 Supp. 8-1020(p). The KJRA requires that a petition for judicial

7

review "set forth . . . the petitioner's reasons for believing that relief should be granted." K.S.A. 2013 Supp. 77-614(b)(6). A petitioner must set forth the specific issues he or she will raise before the district court in order to give the court and the agency notice. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 405-06, 204 P.3d 562 (2009). Failure to strictly comply with these pleading requirements divests the district court of subject matter jurisdiction. 288 Kan. at 399. If the district court lacks jurisdiction, an appellate court does not acquire jurisdiction over the subject matter on appeal. *Ryser v. Kansas Bd. of Healing Arts*, 295 Kan. 452, 456, 284 P.3d 337 (2012).

In his petition for judicial review, Burkhard alleges he did not refuse to submit to a breath test. He argues Deputy Starkey did not follow proper procedures in attempting to administer the test. He also contends Deputy Starkey did not give him an opportunity to complete the test because he was involuntarily clearing his throat. Burkhard asserts Deputy Starkey did not give him an opportunity to take a blood test even though Deputy Starkey knew he was willing to submit to testing.

Burkhard's case is similar to the facts in *Canas-Carrasco v. Kansas Dept. of Revenue*, No. 111,814, 2014 WL 7573923 (Kan. App. 2014) (unpublished opinion). Canas-Carrasco argued in his petition for judicial review that his arresting officer did not have reasonable grounds to believe he had been driving while under the influence of alcohol or drugs. The petition included some facts to support his argument. At trial, defense counsel for the first time raised the issue of the inadmissibility of the PBT as one reason the officer lacked reasonable grounds. The *Canas-Carrasco* court found that inadmissibility of the PBT was not specifically included in the petition for review, thus neither the district court nor this court had subject matter jurisdiction to hear the argument. 2014 WL 7573923, at *3.

Similar to *Canas-Carrasco*, Burkhard raised the broader issue of refusal in his petition and provided some specific facts about the exact nature of his claim for relief.

8

The district court therefore had subject matter jurisdiction over this issue. Burkhard did not, however, mention rescission or did he allege any of the facts necessary to establish a claim of rescission. Because Burkhard did not comply with the pleading requirements of the KJRA regarding rescission, the district court did not have subject matter jurisdiction over the issue. Since the district court did not have jurisdiction, we do not have jurisdiction either.

*Issue Raised for First Time on Appeal*

KDOR argues Burkhard raises the issue of rescission for the first time on appeal. If a litigant does not raise an issue before the district court, he or she cannot raise that issue on appeal. *Wolfe Electric, Inc.*, 293 Kan. at 403.

Burkhard does not appear to have sufficiently raised the issue of rescission before the district court. The only time he mentioned the issue was in a brief statement during closing argument. Burkhard's counsel stated:

> "If . . . there is any indication that [Burkhard] was doing it on purpose immediately after [Deputy Starkey] said it was a refusal [Burkhard] asked to take . . . another chance.
> "Then he was denied that and the fairly recent case law in 2012 that says if a person—and in that case the Defendant actually refused to take the test and then said, oh, I changed my mind. But the officer wouldn't let him and the Court of Appeals said you have to allow them a reasonable opportunity . . . to take the test if they have refused the test."

This was immediately followed by the statement: "Our position is he never refused the test in the first place, he couldn't help what he was doing." Additionally, these statements were couched within a broader argument that Deputy Starkey did not follow proper testing procedures and Burkhard was demonstrating willingness to submit to a breath or

9

blood test. Thus, whether Burkhard's counsel even intended to raise a separate issue is not entirely clear. Even if this statement was sufficient to raise the issue of rescission, the court did not address it, thus precluding appellate review.

Whether a driver rescinded his or her initial test refusal is a finding of fact. See *State v. Gray*, 270 Kan. 793, 797, 18 P.3d 962 (2001) (finding substantial competent evidence supported district court's finding that defendant rescinded refusal). In determining whether a rescission was effective, courts consider if the subsequent consent was made:

> "(1) within a very short and reasonable time after the prior first refusal; (2) when a test administered upon the subsequent consent would still be accurate; (3) when testing equipment is still readily available; (4) when honoring the request will result in no substantial inconvenience to the police; and (5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest." *Standish v. Kansas Dept. of Revenue*, 235 Kan. 900, 902-03, 683 P.2d 1276 (1984).

These factors are known as the *Standish* factors.

Burkhard asserts in his brief that all five *Standish* factors were demonstrated to the district court, and he is arguably correct. All three attempts at a deprivation period occurred within approximately 15 minutes. Thus, his rescission came a very short time after his first refusal. Burkhard testified Deputy Starkey stopped him at around 7 p.m., and they left for the station around 7:15. The drive to the station took about 15 minutes. This left Burkhard 2 1/2 hours to complete the test and still be within the 3 hour window allowed for admissible test results. At the time Burkhard rescinded, he was still in the Intoxilyzer room with Deputy Starkey, so the testing equipment would have been available, and there would not have been a substantial inconvenience to Deputy Starkey.

10

From the record, Burkhard appears to have been in Deputy Starkey's custody and under observation the entire time.

Despite evidence of the *Standish* factors in the record, the district court did not address any of these factors or make a finding as to whether Burkhard effectively rescinded his refusal. We do not make factual findings but instead review those made by district courts or administrative agencies. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 562, 293 P.3d 723 (2013). Because the district court did not make any factual findings on this issue, there is nothing this court can review.

Burkhard notes the district court did not address any of these factors, but this does not provide grounds for relief. Under Supreme Court Rule 165 (2015 Kan. Ct. R. Annot. 257), the district court has the primary duty to provide adequate findings and conclusions on the record of its decision on contested matters. A party, however, must object to inadequate findings of fact and conclusions of law to preserve an issue for appeal. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). In this case, Burkhard did not object to the court's failure to address the *Standish* factors or make a finding as to rescission. Thus, Burkhard failed to preserve this issue for appeal.

*Conclusion*

Substantial competent evidence supported the district court's finding that Burkhard constructively refused to take a breath test by repeatedly clearing his throat. While Burkhard claimed his actions were involuntary due to allergies, he did not meet his burden of proof to establish his allergies were the cause of his conduct. Furthermore, the issue of whether Burkhard effectively rescinded his refusal is not properly before us for review. Thus, we affirm the district court.

Affirmed.

11